## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

LEE FRANKE,                          )
                                     )
           Plaintiff,         )
vs.                                  )          NO.  CIV-07-1366-HE
                                     )
STATE FARM GROUP MEDICAL             )
PPO PLAN FOR UNITED STATES           )
EMPLOYEES,                           )
                                     )
           Defendant.         )

## ORDER

      Plaintiff Lee Franke filed this action seeking medical coverage under the State Farm Group Medical PPO Plan for United States Employees, an employee welfare benefit plan ("the Plan") governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461.  The Plan is established and maintained by State Farm, the employer of the plaintiff's spouse. The plaintiff contends the Plan arbitrarily and capriciously denied her claim for medical benefits, specifically expenses incurred in conjunction with bariatric surgery.  She filed this action after exhausting her administrative remedies.[1]  The defendant has filed a motion for judgment on the administrative record, which the court concludes should be granted.

## Background[2]

---

[1]*References to the Administrative Record will be to "AR-____."*

[2]*The background information is taken from the defendant's response brief and the Record. As the plaintiff did not challenge any of the defendant's factual assertions in her reply, the court assumes their accuracy.*

The plaintiff had bariatric surgery on July 6, 2006.  Her requests for insurance coverage, made both before and after the surgery, were denied, initially by BlueCross BlueShield of Illinois ("BCBS"), the claims processor, and then by State Farm.  State Farm administers the Plan, which is self-funded.[3]

If a claim is denied a beneficiary has two levels of administrative appeal – the first is to BCBS and the second is to State Farm. Plan ¶6.2.2, AR-00068.  The appeal committees on both levels of review consider "all comments, documents, records and other information submitted by the Covered Individual without regard to whether such information was submitted or considered when the Covered Individual's claim was first denied."  AR-00068-69   When reviewing a claim denial based on a medical judgment, the committees also consult with a health care professional, who was not involved with the initial claim decision. AR-00068, 70.

The medical documents in the Administrative Record, which cover the plaintiff's medical history for approximately the two year period preceding her surgery, AR-00138-84, reflect that her physician, Dr. Winzenread, treated her with various medications principally for type-2 diabetes, hypertension, and hyperlipidemia.  A sleep study conducted a few months before the plaintiff's surgery showed she also suffered from sleep apnea.

Although the plaintiff's weight increased from 235 lbs on March 31, 2004, to 280 on March 13, 2006, the Record does not reflect that the plaintiff participated in any medically

---

[3]*Plan, ¶1.1.2,¶1.1.5, AR-0009-10.*

supervised weight reduction program.  References in the Record to diet are limited.  The physician's note on 10/25/04 simply states "[d]iet and exercise."  AR-00148.  The April 13, 2005, progress note states: "She missed not following any diet ....She [illegible] redouble her efforts on diet and exercise."  AR-00154.  The plaintiff's weight is not mentioned again in the notes until 10/17/05.  The progress note from that date states that "Lee is here for recheck on her diabetes ... Slow, steady weight loss is also encouraged."  AR-00157. The following March the plaintiff asked her physician for a letter "for Roux-en-Y stomach bypass surgery." AR-00159.  At that time Dr. Winzenread prescribed a diet drug, Xenical, for her.[4]  *Id.*

Dr. Winzenread discussed health maintenance with the plaintiff on March 31, 2004, AR-00143, and noted that she "otherwise will continue healthy lifestyle" on October 17, 2005.  AR-00157.  He apparently encouraged her to exercise in October, 2004, AR-00148, commenting on April 13, 2005, that she was unable to exercise due to tendon surgery on her foot and was to redouble her efforts on exercise.  AR-00154.

On April 3, 2006, Dr. Luis V. Gorospe at the Center for Surgical Weight Control  & Bariatrics Surgery Associates, P.L.L.C. faxed BCBS a letter dated March 24, 2006, recommending bariatric surgery for the plaintiff ("This has been found to be medically necessary....") and requesting preauthorization for the procedure. AR-00181-82. BCBS responded two days later by letter, stating that it was "not in a position to consider the request regarding the availability of benefit coverage for surgical treatment of morbid obesity due

---

[4]*In her verified recorded statement, the plaintiff stated that she filled the Xenical prescription once, but did not continue because it was not helping.*

3

to the lack of available medical documentation to determine medical necessity based on BCBSIL's medical policy." AR-00183. The letter then specified the medical documentation BCBS needed to consider whether the surgery would be covered under the healthcare benefit plan. When it did not hear back from Dr. Gorospe, on May 18, 2006, BCBS sent the same letter again.[5] When no further response was received, BCBS sent Dr.Goropse a letter dated June 2, 2006, stating that the plaintiff was not eligible for medical benefits for gastric bypass surgery because "no documentation of 12 consecutive months within the last 24 months of failed medically supervised weight management" had been received. AR-00188. BCBS advised the provider/plaintiff to submit any additional documentation that would support the request.[6]

By an undated letter State Farm received on June 27, 2006, the plaintiff appealed the precertification denial, asserting that she satisfied the conditions for bariatric surgery benefits. AR-00190. Her letter lists as attachments, records from Walgreens Pharmacy, a report from the Sleep Center of Northwest Oklahoma City, medical records from her primary care physician, Dr. Winzenread, records from her treating psychologist Dr. Rebecca Nicholas, and a letter from Dr. Mueller, an orthopedist.

In her appeal the plaintiff addressed BCBS's May 18 and its June 2, 2006, letters. In

---

[5]*The April 5, 2006, letter that is in the Record consists of only one page. It appears either the second page, which summarizes some of the categories of medical documentation BCBS needed to make the coverage determination, was either omitted from the record or not sent to Dr. Gorospe. Regardless, the provider was notified that BCBS was not, at that time, precertifying the surgery.*

[6]*Though the letter was sent to the provider, the plaintiff was sent a copy.*

response to BCBS's request for documentation of unsuccessful participation in a medically supervised weight reduction program, the plaintiff stated that Dr. Winzenread had placed her on a supervised diet in September, 2004, and she was required to weigh at his office in follow-up visits that occurred no more than three months apart.[7]  She also stated that he discussed a low calorie, low fat diet with her, explained that eating could no longer be used as entertainment or for stress relief and explained how to change her behavior, and prescribed Xenical.  She stated that because her condition had deteriorated and her ability to breathe continued to be restricted,[8] she felt she had no choice but to proceed with the surgery, which she had scheduled for July 6, 2006.  She also stated she was "willing to cooperate by providing ... a medical authorization, provider list, oral statements, or any other requests to assist ... in consideration of approval of this appeal."  AR-00193.

State Farm wrote the plaintiff on June 27, 2006, informing her that, effective June 1, 2006, the appeals process had changed and all appeal requests were reviewed initially by the BCBS Appeal Committee.  State Farm acknowledged the plaintiff had requested an urgent care review, but stated that her "situation [did] not meet the qualifying criteria."[9]  AR-00194.

---

[7]*The plaintiff states in her letter that she attached medical records from Dr. Winzenread which show her weight since 2004, but does not indicate that those records document her participation in a medically supervised weight loss program.*

[8]*Her documentation from the sleep apnea clinic showed, the plaintiff stated, that her oxygen saturation level was dropping at night to a level that could cause speech impediments, memory loss and death.  AR-00192.*

[9]*In her letter the plaintiff stated that she was "under the belief that this claim INVOLVES URGENT CARE as surgery is imminent."  AR-00193.*

State Farm informed the plaintiff that, "in view of your scheduled treatment, we are promptly forwarding your appeal request to BCBSIL for review by their Appeal Committee.  You will receive a written response from BCBSIL within 30 days of their receipt of your request." *Id.*

Bariatric surgery was performed on the plaintiff on July 6, 2006.  The plaintiff subsequently was notified that her claim for medical benefits associated with the surgery was denied.  AR-00121-27.[10]

On October 2, 2006, BCBS denied the plaintiff's appeal from the denial of her precertification request.[11]  The decision relied on the report of Dr. L.D. George Angus, a board certified general surgeon with additional expertise in bariatric medicine.  Dr. Angus concluded the plaintiff had not satisfied the requirement of "participation in a clinically supervised non-surgical weight reduction program for at least six months within the previous 24 months prior to the proposed surgery...."  AR-00132.  He also determined that "no extenuating circumstances [were] documented such that bariatric surgery [was] medically necessary to address" the plaintiff's obesity, as the submitted clinical information did not document any uncontrolled medical conditions.  AR-00133.  BCBS informed the plaintiff that if she or her  physician provided additional medical records, which addressed the policy

---

[10]*BCBS sent the plaintiff three Explanation of Benefits pertaining to the surgery, dated 8/10/06, 8/17/06, and 9/05/06.*

[11]*As the surgery had, by this point, been performed and the plaintiff had been sent benefits explanations denying coverage, the appeal decision effectively applied to both the precertification request and benefits denial.*

criteria (specified in the letter) applied to determine if bariatric surgery was medically necessary, the appeals case would be reopened.  AR-00130.

The plaintiff responded by sending BCBS her verified recorded statement, which focuses on the surgery's success. AR-00103-120.  With respect to her preoperative weight loss efforts, the plaintiff states that she tried to lose weight, AR-00105, her doctor prescribed a weight-loss drug that she only filled once, AR-00106, she went on a low fat diet and exercised, AR-00107, and her physician consulted with her about weight loss, told her what to eat, and she was weighed regularly." AR-00115.  She also stated that she believed she followed through on a doctor-supervised weight reduction program long enough to justify the surgery. AR-00114.[12]

BCBS reopened the appeal, but again denied the plaintiff's claim seeking reimbursement for the bariatric surgery.  The plaintiff then filed a second level appeal with State Farm and requested various documents, which were provided to her.  Due to an apparent misunderstanding, State Farm did not consider the appeal until May, 2007.[13]  After reviewing the information submitted by the plaintiff, including her medical records and the recorded statement, State Farm denied the appeal on June 11, 2007, as it agreed with BCBS

---

[12]*Some of the testimony is unclear.  E.g., "I tried to lose weight and the doctor on a day regularly to be weighed, and we would talk about it he prescribed some diet pills, but I continued to gain weight."  AR-00105*

[13]*The plaintiff had asked for additional time after receipt of the documents she had requested to submit additional evidence and arguments to support her appeal.  AR-00098.  State Farm "held the appeal pending either the submission of additional evidence ... or notification that there was not other evidence to submit."  AR-00089.  It was not until State Farm received a letter from plaintiff dated May 18, 2007, that it realized the appeal was ready for review. AR-00088-89.*

that the plaintiff had not met the criteria required for the Plan to cover the surgery.  AR-00088-89.   State Farm concurred that the plaintiff had failed to submit documentation demonstrating her active participation within the last twenty-four months in an acceptable weight reduction program.[14]  In its June 11, 2007, letter,  State Farm explained the reason for the requirement:

> Satisfaction of [the weight loss program] criterion is necessary to ensure that individuals have tried less costly and less invasive treatment methods before proceeding to the surgical alternative.  Both State Farm and BCBS believe that long-term results from bariatric surgery are dependent on compliance with a strict postoperative dietary regimen and, unless compliance can be demonstrated preoperatively, there is a strong possibility that long-term success will not be achieved.

After her appeals were denied, the plaintiff filed this action.

Standard of Review

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), sets forth the appropriate standard of review in cases contesting a benefit determination under an ERISA plan.  "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[15]  *Id.* at 115.  If the ERISA plan gives the administrator discretionary powers, the district court reviews the administrator's decisions under an arbitrary and capricious standard.  Flinders v. Workforce

---

[14]*To be considered acceptable or appropriate, the program had to include the components specified in the Plan, such as behavioral modification or behavioral health interventions, etc. AR-00225; AR-00054-55.*

[15]*ERISA does not establish the standard of review.  Firestone, 489 U.S. at 109.*

8

Stabilization Plan of Phillips Petroleum Co., 491 F.3d 1180, 1189 (10th Cir. 2007).  The

parties agree, and the Plan language supports their conclusion, that the arbitrary and

capricious standard of review applies.[16]  Under that standard the court "curtail[s] [its] review,

asking only whether the interpretation of the plan was reasonable and made in good faith."

Weber v. GE Group Life Assurance Co., 541 F.3d 1002, 1010 (10th Cir. 2008) (internal

quotation omitted).   However, an entity, such as State Farm, which is both the plan insurer

and the plan administrator operates under an inherent conflict of interest.  Metropolitan Life

Ins. Co. v. Glenn, ___ U.S. ___ , ___(2008).  *Accord*  DeGrado v. Jefferson Pilot Financial

Ins. Co., 451 F.3d 1161,1167 (10th Cir. 2006) ("[B]ecause it is both the insurer and plan

administrator, Jefferson 'may favor, consciously or unconsciously, its interests over the

interests of the plan beneficiaries.'") (quoting Fought v. UNUM Life Ins. Co. of Am., 379

F.3d 997, 1003 (10th Cir. 2004)).  When such a conflict exists, the court dials back its

deference, and weighs the conflict "'as a factor in determining whether there is an abuse of

discretion." Weber, 541 F.3d at 1010 (quoting Glenn, ___ U.S. at ___).  A sliding scale of

deference is applied; the level of deference decreases in proportion to the seriousness of the

conflict. *Id.*  The court "will still employ the arbitrary and capricious standard, but ... will

weigh [State Farm's] conflict of interest as a factor in determining the lawfulness of the

---

[16]*The Plan gave the  plan administrator "the power ... to make all determinations that the Plan requires for its administration, and to construe and interpret the Plan whenever necessary to carry out its intent and purpose and to facilitate its administration ... Benefits under the State Farm Insurance Companies Group Medical PPO Plan for United States Employees will be paid only if the Plan Administrator decides in its discretion that the applicant is entitled to them." Plan, ¶1.1.4, AR -00009.*

benefits denial."[17]  *Id.* at 1011.

When reviewing a decision denying benefits, the court "'consider[s] only the rationale asserted by the plan administrator in the administrative record and determine[s] whether the decision, based on the asserted rationale, was arbitrary and capricious.'"  *Id.* (quoting <u>Flinders</u>, 491 F.3d at 1190).  That determination is based on the language of the plan.  *Id.*  The court considers "the plan documents as a whole and, if unambiguous, construe[s] them as a matter of law."  *Id.* (internal quotation omitted).  If the language is ambiguous, the court "'must take a hard look and determine' whether [State Farm's] decision was arbitrary in light of its conflict of interest."  *Id.* (quoting <u>Fought</u>, 379 F.3d at 1008).  The court has confined its review to the administrative record, <u>Flinders</u>, 491 F.3d at 1190, and begins its analysis by examining the language of the Plan and BCBS policy.[18]

The Plan

The pertinent policy provisions State Farm applied to the plaintiff's administrative appeal[19] provide that:

---

[17]*The plaintiff has offered no evidence suggesting that State Farm's dual role affected its impartiality.*

[18]*The policy provisions tracked those of the Plan and BCBS and State Farm used the terms Plan and medical policy interchangeably.*

[19]*The language of the Plan and the BCBS policy in effect at the time of the surgery (July, 2006) pertaining to eligibility for bariatric surgery benefits was similar to that applied to the plaintiff's claim, but was more restrictive.  The Plan and 2006 BCBS policy both  required a documented failure of 12 continuous months of compliance with medically supervised non-surgical methods of weight reduction.  Neither included the language: "It is expected that appropriate non-surgical treatment should have been attempted prior to surgical treatment."  Compare AR-00054-00055 (Plan)  and AR-00210-11(policy effective 7/1/06) with AR-00224-00225 (policy effective 9/1/06).  The medical policy's eligibility criteria for bariatric surgery benefits were relaxed while*

<u>To be considered eligible for benefit coverage of bariatric surgery for treatment of morbid obesity, the following three criteria must be met</u>:

        ....

C. It is expected that appropriate non-surgical treatment should have been attempted prior to surgical treatment of obesity

<u>Non-surgical treatment of morbid obesity appropriateness criteria</u>:

•        Medical record documentation of active participation in a clinically-supervised, non-surgical program of weight reduction for at least 6 months, occurring within the twenty-four (24) months prior to the proposed surgery and preferably unaffiliated with the bariatric surgery program. [NOTE: The initial BMI at the beginning of a weight reduction program will be the "qualifying" BMI used to meet the BMI criteria for the definition of morbid obesity used in this policy.]

•        A program will be considered appropriate if it includes the following components:
        1. Nutritional therapy, which may include medical nutrition therapy such as a very low calorie diet such as MediFast or OptiFast OR a recognized commercial diet-based weight loss program such as Weight Watchers, Jenny Craig, etc.
        2.  Behavior modification or behavioral health interventions.
        3. Counseling and instruction on exercise and increased physical activity.
        4. Pharmacologic therapy (as appropriate).
        5. Ongoing support for lifestyle changes to make and maintain appropriate choices that will reduce health risk factors and improve overall health.

BCBS Policy, AR-00224-25.  The plaintiff does not assert that the Plan or policy language

_____

*the plaintiff's administrative appeal was pending. Both the BCBS and State Farm Appeal Committees applied the more lenient standard, which required active participation in an appropriate weight reduction program for 6, rather than 12, months, to the plaintiff's appeal.  AR-00128; AR-00088.*

was ambiguous.[20]  The question presented is whether the plaintiff satisfied the policy criteria for medical benefits for bariatric surgery.

## Analysis

The defendant does not dispute that the plaintiff satisfied two of the criteria for bariatic surgery,[21] but contends she failed to satisfy the requirement of documented participation in a clinically supervised non-surgical weight reduction program.[22]  The plaintiff claims she met the Plan's pre-surgery requirements or, if not, that extenuating circumstances made the surgery medically necessary.  She also argues that, because "the medical justification for paying for this surgery has been accomplished," the policy benefits should be paid.  Plaintiff's brief, p. 3.

The plaintiff attempts to demonstrate she participated in the necessary weight loss program by asserting that her physician placed her on a supervised diet in September 2004,

[20]*Arguably the statement in the policy that, for bariatric surgery to be covered, three criteria "must be met" is qualified by: "It is expected that appropriate non-surgical treatment should have been attempted prior to surgical treatment of obesity."  The plaintiff did not, though, argue that the language was ambiguous.  Even if participation in a medically supervised weight reduction program was only an expectation, it was not an unreasonable expectation in this case.*

[21]*The defendant notes that the Record does not contain evidence supporting the second criteria for bariatric surgery benefits – a documented five year history of morbid obesity.  See AR-00225; AR-00055.  That was not, though, the basis for denying the plaintiff's request for Plan benefits.  See* Flinders, *491 F.3d at 1190 ("[W]hen reviewing a plan administrator's decision to deny benefits, we consider only the rationale asserted by the plan administrator in the administrative record ....").*

[22]*The defendant asserts that the plaintiff went six months, from Oct. 19, 2005, through January 13, 2005, without having her weight documented in Dr. Winzenread's office because she refused to be weighed.  That, however, is only a four month span. The Record reflects that the plaintiff was weighed on October 19, 2004, AR-00147, but refused to be weighed the following December and January.  See AR-00149, AR-00151.*

that he discussed with her "a low calorie low fat diet to be followed on a regular basis, ... explained that eating can no longer be an entertainment [or] for stress relief and explained to her how to change her behavior," plaintiff's brief, p. 8, that she attempted daily walking, was prescribed Xenical, and was "required to weigh at Dr. Wizenread's office in follow-up visits not more than three months apart." *Id.* at p. 9. Even if all this were true,[23] it does not show the Plan criteria were met. While the plaintiff may have tried to diet under the supervision of her primary care physician and he encouraged her to lose weight, the Record does not demonstrate compliance with the Plan's requirement of participation in a structured weight reduction program. The plaintiff simply did not participate in any type of "clinically-supervised, non-surgical program of weight reduction for at least 6 months," AR-00225, much less one containing the five required components.

　　　She also did not show that exigent medical problems existed warranting the surgery.[24]

---

[23]*Not only did the plaintiff fail to substantiate her statements with citations to the Record, several of her assertions are misleading or misstatements of what is in the Record. For example, the plaintiff was, as she states, prescribed Xenical. However, she was given the prescription the same day she asked her physician for a letter recommending the bariatric surgery and admitted during her recorded statement that she only filled the prescription once. The plaintiff also asserts that "[i]t appears that the Plaintiff attempted, to the best of her ability, to diet under the supervision of her primary care physician, Dr. Mueller." Plaintiff's brief, pp. 11-12. The only reference to Dr. Mueller in the Record that the court is aware of consists of his letter recommending bariatric surgery. He wrote that the plaintiff had multiple orthopedic conditions that he believed were related to her weight and would resolve if she could reduce her weight. AR-00160.*

[24]*Although the defendant addresses a "medical necessity" argument in its response, the plaintiff appears to be asserting that she is entitled to surgical benefits because there were extenuating circumstances such that she should be excused from complying with the Plan criteria. She does not, however, cite any provision in the policy or Plan, or any evidence in the Record that supports an award of benefits because of medical necessity or extenuating circumstances.*

Contrary to the plaintiff's assertion, plaintiff's brief, p. 13, Dr. Winzenread did not state in his March 28, 2006, letter that the plaintiff's problems were uncontrolled.  He did write that she was going downhill and that he felt that "if she [did] not address her morbid obesity that she [might] well be more early disabled, wheelchair bound earlier or suffer a premature death."  AR-00161.  Her orthopedic surgeon also stated that she was "at extra risk for developing osteoarthritis of the hips and knees because of her weight," and had several problems with her lower extremities that weight reduction would resolve.  AR-00160.  Neither indicated that the plaintiff had to have immediate surgery.  Dr. Angus, the physician who prepared the Peer Review Report in conjunction with the plaintiff's initial appeal, found that "[t]here [were] no extenuating circumstances documented such that bariatric surgery [was] medically necessary to address [the plaintiff's] obesity even though BCBSIL Medical Policy Criteria were not met."  AR-00133.  He concluded there were "no uncontrolled medical conditions documented in the clinic information submitted."  *Id.*[25]

The crux of the plaintiff's argument is that because the surgery was successful, the Plan should pay for it.[26]  However, the coverage determination is based on the provisions of

---

[25]*BCBS had asked the peer reviewer, Dr. Angus, whether there were extenuating circumstances which would exempt the plaintiff from complying with the policy criteria. See AR-00132.*

[26]*The plaintiff relies on* Bauman v. Mila Nat'l Health Plan, *342 F.Supp.2d 456 (D.S.C. 2004), but admits that in* Bauman *"the requirement that the plaintiff undergo dieting was part of internal guidelines rather than the claimed document." Plaintiff's brief, p. 11. That distinction, even the plaintiff notes, is "significant." Id. Also, as is obvious from the case quotation included in the plaintiff's brief, the court found that the plaintiff in* Bauman *satisfied the guideline requirement of "reasonable compliance."*

14

the plan, not the success of the surgery.

The plaintiff may not have benefitted from a weight reduction program. That, however, is not a determining factor. She also may have needed the surgery because of her sleep apnea. The Record does not, however, document a need for immediate surgery. What it does reflect is that the Plan required the plaintiff to provide documentation showing that she participated for six months in a clinically-supervised, non-surgical weight loss program. As she did not do that, State Farm's decision denying coverage was not arbitrary and capricious, but rather was reasonable and supported by substantial evidence. *See* Chalker v. Raytheon Co., 291 Fed.Appx. 138, 143 (10th Cir. 2008) (unpublished) ("Indicia of arbitrary and capricious decisions include lack of substantial evidence, mistake of law, bad faith, and conflict of interest by the fiduciary.") (quoting Caldwell v. Life Ins. Co. of N. Am., 287 F.3d 1276, 1282 (10th Cir. 2002)).

Accordingly, the defendant's motion [Doc. #24] is granted and judgment will be entered in favor of the defendant and against the plaintiff.

**IT IS SO ORDERED**.

Dated this 30th day of December, 2008.

                                                              _____

                                                              JOE HEATON
                                                              UNITED STATES DISTRICT JUDGE